# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JEREMY T. GREENE,

        Plaintiff,

v.                                                                       Case No. 09-CV-291

JOHN DORUFF, MARK STUTLEEN,
ANDREW VAN GHEEM, and WILLIAM POLLARD,

        Defendants.

# ORDER

The *pro se* plaintiff, Jeremy T. Greene, who is incarcerated at the Green Bay Correctional Institution (GBCI), is proceeding *in forma pauperis* on a claim under 42 U.S.C. § 1983 that the defendants unlawfully retaliated against him after he filed a grievance regarding his removal from a work assignment in the prison library at GBCI. This matter now comes before the court on the plaintiff's motion to amend/correct the caption, and the defendants' motion for summary judgment.

## I. PLAINTIFF'S MOTION TO AMEND/CORRECT THE CAPTION

On July 20, 2010, the plaintiff filed a motion seeking to amend the caption to reflect the defendants' corrected names: John Doruff (sued as Jack Doruff), Mark Stutleen (sued as Lt. Stutleen), Andrew Van Gheem (sued as Gary Van Gheem), and William Pollard. The defendants provided these corrected names in their answer. Accordingly, this motion is granted, and the caption has been modified to reflect the correct names of the defendants.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden

simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

**B.    Facts**[1]

The plaintiff, Jeremy T. Greene, is a Wisconsin Department of Corrections (DOC) inmate housed at the Green Bay Correctional Institution (GBCI). All four defendants are employed by the DOC at GBCI: John Doruff is the Education Director and William Pollard is the Warden. Lieutenants Mark Stutleen and Andrew Van Gheem are Supervising Officers.

On approximately October 29, 2007, Greene was scheduled to start a work assignment as an inmate library worker at GBCI, with an anticipated end date of October 29, 2009. Green's major duties/responsibilities as a library worker were to:

---

[1]Facts are taken from the defendants' Proposed Findings of Fact, the verified Complaint, and the affidavits submitted by the parties.

maintain law library collection and provide assistance; make photocopies and maintain photocopy log with accuracy; instruct users in locating materials, use of computers and Interlibrary Loan; process new materials, check materials in and out using a computer; generate statistics from a computer as requested; maintain stacks, shelves and repair materials; provide general clerical services; and perform other duties as assigned by instructor. On April 4, 2008, Librarian Kulieke signed "Offender Performance Evaluation," form DOC-780, showing that Green's work performance was satisfactory, and stating:

> Mr. Greene has done a creditable job of running the circulation desk. He has learned his duties fairly well and has been doing a more effective job of shelving books and keeping up with the overall workload. He deals with other workers and library patrons good-naturedly.

(Defendants' Exhibit 1004, at 4).

On July 1, 2008,[2] at 8:00 a.m., Greene placed an envelope containing legal documents that he needed copied into the library in-bound receptacle, prior to going to work as an inmate library clerk. At approximately 8:45 that morning, while Greene was attending attorney call, Correctional Officer Wiznewski told him that he had intercepted the envelope and determined it to be contraband free, and directed him to carry it back to work at the library so that he could have the documents copied.

---

[2]The parties disagree as to whether these events occurred on July 1, 2008, or July 2, 2008. For purposes of summary judgment, the court accepts Greene's contention that the correct date is July 1, 2008. The contemporaneous documentary evidence also supports this contention, as July 1, 2008, is the date that Lt. Stevens signed the work assignment removal form and the date on the checkout slip for the *Anders* case. (Plaintiff's Exhibits 7 and 3).

After the documents were copied, Greene took a few moments to highlight sections that were previously highlighted on the original documents. Greene also checked out the case of *Anders v. California* and printed out a receipt. Greene then placed the *Anders* case, the receipt, the copies, and the legal documents into an envelope and turned it over for mailing to Correctional Officer Holterman.

On July 3, 2008, Greene was escorted into a meeting in defendant Doruff's office. Doruff asked why Greene sent the documents to himself, and why the copies were highlighted. Greene stated that they were pertinent to a case that he was assisting another inmate with, and that the copies were highlighted because the originals had been highlighted. Greene also informed Doruff that Librarian Kulieke allowed him to use a couple of minutes to complete such services for himself as long as his work was caught up. As he was talking, Greene observed Doruff examining the copy of *Anders*, and the check-out slip for it, as well as the disbursement request for copies.

A few hours later on July 3, 2008, Greene received a work assignment removal form signed on July 1, 2008, by the Institution Reviewing Representative, Lt. Stevens. The form removed Greene from his work assignment in the library effective July 2, 2008. On July 4, 2008, Greene spoke with Lt. Stevens, who told Greene that he had been removed at Doruff's request, and that whether or not the

removal was permanent was up to Doruff.[3]  Doruff was out of the institution for a period of time after the incident.[4]  On July 4, 2008, Greene wrote Doruff a letter asking Doruff to let him know his final decision.  On July 25, 2008, Greene submitted offender complaint #GBCI-2008-20510, alleging that Doruff wrongfully removed him from his job.

On August 7, 2008, Greene informed Doruff's subordinate, Librarian Kulieke, about his offender complaint against Doruff and allowed Kulieke and inmate library clerk Richard Crapeau to read the complaint and attachments.  The following day, on August 8, 2008, Doruff completed an adult conduct report alleging that Greene violated the rules regarding theft and inadequate work performance by possessing the *Anders* case without authorization[5] and by highlighting materials while on his job as a library clerk.[6]

The same day, Stutleen reviewed the conduct report and determined that it should proceed as a major offense, based upon the value of the property involved.

---

[3] Doruff avers that he "does not have the authority to make a determination related to removing any inmate from a work assignment," (Doruff Aff. ¶ 12) but does not deny asking or directing Lt. Stevens to remove Greene from his work assignment.

[4] Doruff does not specify the length of his absence, saying only that he was "out of the institution for a period of time after the date of the incident on July 2, 2008." (Doruff Aff. ¶ 13). Greene avers that Lt. Stevens informed him that Doruff was on vacation only until July 14, 2008. (Greene Aff. ¶ 18).

[5] Doruff avers that it was his "determination" that the *Anders* case was listed as missing from the library. (Doruff Aff. ¶ 18). It is undisputed that the theft charge was later dropped, and Doruff does not explain how he made this initial determination that Greene had stolen the case. Greene avers that only library staff had access to the checkout records, and that Doruff did not ask library staff whether the *Anders* case was checked out. (Greene Aff. ¶ 32-33). Greene further avers that Doruff reviewed the check-out receipt for the *Anders* case while Greene was present in Doruff's office. (Greene Aff. ¶ 31).

[6] Defendant Doruff avers that inmate library workers are not allowed to work on personal matters while performing job duties. (Doruff Aff. ¶ 16). Greene avers that Librarian Kulieke allowed him to perform services for himself as long as his work was caught up. (Greene Aff. ¶ 13).

On or about August 9, 2008, Greene told Stutleen that Doruff filed a retaliatory conduct report against him because he had learned that Greene complained about Doruff's actions. Greene asked Stutleen why he upgraded the charges based on value when the allegedly stolen case law consisted of only a few pages, which cost no more than 30¢. Stutleen told Greene that theft is always upgraded and that Doruff thought it was a big deal. Greene told Stutleen that he actually had the allegedly stolen case law checked out, and Stutleen replied that he approved the conduct report based on Doruff's allegations.

On August 26, 2008, Van Gheem presided over a disciplinary hearing related to Greene's conduct report. During the hearing, Greene provided a written statement that he believed Doruff filed the conduct report as a reprisal for Greene filing a complaint against Doruff, but Van Gheem did not address this allegation. Summarizing witness testimony on form DOC-84A, Van Gheem wrote that Librarian Kulieke testified that "[Greene's] performance is adequate" but also that Kulieke discontinued any inmate legal work at Doruff's request. (Defendant's Exhibit 1005). Van Gheem found Greene guilty of Inadequate Work or Study Performance under Wis. Admin. Code § DOC 303.62, which provides that "[a]ny inmate whose work fails to meet the standards set for performance on a job or school program and who has the ability to meet those standards, is guilty of an offense." As a reason for his decision, Van Gheem wrote:

> [I]nmate was performing a task while at his work assignment other than his prescribed duties. The position description verifies that this is not an authorized task. Report writer [Doruff] supervises entire work area and considers this to be a failure to meet work standards.

(Form DOC-84, Plaintiff's Exhibit 15). Van Gheem imposed a sentence of 14 days of cell confinement and disposal of the photocopied documents as contraband, stating that this disposition was based on Greene's history of similar offenses.[7]

On August 26, 2008, Greene appealed, and on September 18, 2008, Warden Pollard affirmed the hearing officer's decision and the sentence imposed, although he ordered the case returned to the hearing officer for corrections recommended by Inmate Complaint Examiner Cathy Francois, including: noting that Doruff was present at the hearing as an observer, addressing Greene's offense history, and striking reference to the theft charge.

## ANALYSIS

In support of summary judgment on the merits, the defendants offer that the plaintiff failed to present competent evidence that any of them acted with a retaliatory motive. Specifically, defendant Doruff maintains that he issued the conduct report because Greene failed to adhere to his job duties, and that he was not even aware that Greene had filed a complaint against him. Defendants Van Gheem, Stutleen

---

[7] Van Gheem avers that he noted that Greene was issued two conduct reports in July 2008, including one in which he was found guilty of "passing contraband" under DOC 303.47. (Van Gheem Aff. ¶ 18). This appears to be a typographical error in Van Gheem's affidavit, as the record reflects that conduct report was for *possessing* contraband, not passing it. The contraband in that conduct report was an extra pair of shoes in Greene's cell.

-8-

and Pollard also submit that they did not know that Greene had filed a complaint against Doruff.

In response, Greene asserts that Doruff issued the conduct report against him more than a month after the events occurred, but less than 24 hours after Greene informed Doruff's subordinate of his complaint against Doruff. In addition, Greene argues that the theft charge in the conduct report was not justified, and that his work performance was adequate. Greene further maintains that he informed defendants Van Gheem, Stutleen and Pollard that Doruff's conduct report was retaliatory, but they all failed to take appropriate action.

To prevail on a First Amendment retaliation claim under § 1983, a plaintiff "must prove that '(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future'; and (3) a causal connection between the two." *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010), quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (holding that inmate stated claim for free speech retaliation where he alleged that prison officials and guards would not have harassed him but for his participation in a lawsuit). The first element is not disputed here. It is clear that "a prison official may not retaliate against a prisoner because that prisoner filed a grievance." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The defendants belatedly make a one-sentence argument regarding the second element in their reply brief, contending that "Greene cannot show that his First Amendment rights were chilled as a result of the

alleged retaliation...." (Defendants' Reply at 7). This argument comes too late, is wholly undeveloped, and lacks merit. Courts have acknowledged that receiving retaliatory conduct reports may deter inmates from exercising their First Amendment rights. *Bridges*, 557 F.3d at 552 (stating that unjustified disciplinary charges are actionable under § 1983 if brought in retaliation for a constitutionally protected right, and that this and other harassment may deter a person from exercising his First Amendment rights); *see also Jones v. Smith*, 2009 WL 1732431 * 3 (W.D. Wis., June 18, 2009) ("[S]ubmitting a false conduct report that was dismissed only after plaintiff had been in temporary lock-up for nearly a month . . . would be sufficient to deter a person of ordinary firmness. . . .").

This case pivots on the third element, whether Greene has presented enough admissible evidence to permit a jury to find that there was a causal connection between Greene's filing an offender complaint regarding Doruff, and Doruff issuing a conduct report against Greene. Doruff avers that he was not aware that Greene had filed an inmate complaint regarding him when he issued the conduct report against Greene. The issue of a decision-maker's knowledge can be crucial for retaliation claims at summary judgment. *See e.g. Luckie v. Ameritech Corp*, 389 F.3d 708, 715 (7th Cir. 2004) ("The key inquiry in determining whether there is a causal connection . . . is whether Paterson was aware of the allegations of discrimination at the time of her decisions . . . absent such knowledge there can be no causal link . . . ."); *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 755 (7th

Cir. 2000) ("The critical issue here ... is whether the person who made the decision to terminate his employment was aware of the discrimination allegations at the time, because absent such knowledge, Maarouf lacks a causal link between the termination and the complaint of discrimination.").

It is "rare for a plaintiff to have smoking gun evidence that a defendant knew of her protected speech, or for a defendant to admit such knowledge." *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 672 (7th Cir. 2009). Consequently, "[c]ircumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive." *Id.*, quoting *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). Here, Greene contends that Doruff somehow "caught wind" of his complaint and belatedly issued a baseless conduct report in retaliation. (Greene Aff. ¶ 22). Greene states that Kulieke reports to Doruff, and that Doruff filed the conduct report, more than a month after the events it concerns, the very day after Greene showed a copy of his complaint to Kulieke. While Doruff explains that the delay in filing the conduct report was due to his absence for a period of time after the events occurred, he does not specify the dates of his absence or explain why he issued the conduct report on that particular day. Accordingly, the timing is suspicious, which may constitute circumstantial evidence of a causal connection. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("Suspicious timing rarely is enough to create a triable

issue, but in an extreme case like this, where the adverse action comes 'on the heels' of the protected activity, it is.").

This case, however, differs from the "extreme" situation presented in *Casna*. In that case, there was no dispute that the defendant police chief's secretary immediately informed the chief about an employee's protected speech, and that the chief recommended that the employee be fired the following day. Here, on the contrary, there is no evidence that Kulieke or anyone else told Doruff about Greene's complaint. Greene assumes that Doruff learned of his complaint immediately before issuing the conduct report, but his assumption is based primarily upon the fact that Doruff acted to have him punished despite his pleas that he did not violate any work rules. Unfortunately for Greene, the Seventh Circuit has observed "that even if a defendant was brimming over with unconstitutional wrath against a § 1983 plaintiff, that plaintiff cannot prevail unless he or she establishes that the challenged action would not have occurred but for the constitutionally protected conduct." *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002).[8] Drawing the inferences most favorable to Greene, it appears that Doruff consistently treated him with animus from the time Doruff first decided that he was displeased with Greene's work performance. Doruff may have treated Greene unfairly by refusing to consider evidence favorable to

---

[8]This case was abrogated by *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004), but later revived by *Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009) ("Some decisions say that a plaintiff just needs to show that his speech was a motivating factor in defendant's decision. These decisions do not survive *Gross*, which holds that unless a statute provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law.") (referring to *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009)).

Greene, but he began doing so well before Greene filed a complaint against him. Without any evidence that Doruff learned of Greene's complaint before issuing the conduct report, Greene cannot hope to establish that Doruff would not have issued the conduct report but for Greene's complaint. *See Luckie*, 398 F.3d at 715 ("It is not sufficient that Patterson *could* have or even *should* have known about Luckie's complaints; she must have had actual knowledge of the complaints for her decisions to be retaliatory.") (emphasis in original). Accordingly, Greene's retaliation claim against Doruff does not survive summary judgment and will be dismissed.

Greene's claims against the other three defendants are subject to summary judgment as well. Greene contends that Warden Pollard and Lieutenants Stutleen and Van Gheem were personally involved in Doruff's retaliation against him insofar as they took actions or failed to take actions that approved and supported Doruff's unconstitutional retaliation. Even if Doruff did unlawfully retaliate against Greene, this theory has an important limitation:

> [T]he official "approving" the unconstitutional conduct must know of the facts that make the conduct unconstitutional . . . in other words plaintiff must show that defendant Stellings *believed* defendant Greetan had issued the conduct report, not for the reasons stated in the report, but because defendant Greetan had called Greetan corrupt and threatened to file an incident report against him.

*Wilson v. Greetan*, 571 F.Supp.2d 948, 955 (W.D. Wis. 2007) (emphasis in original). Greene points out that he told these defendants that Doruff was retaliating against him, but "[k]nowledge of plaintiff's allegation of retaliation is not the same thing as knowing that [the correctional officer] was lying about his reasons for the conduct

report." *Id.* The plaintiff cannot show, as he must for these claims to survive summary judgment, that these defendants "did not honestly believe that the conduct report was valid." *Id.* As a result, Greene's claims against these defendants must also be dismissed.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to amend/correct the caption (Docket #40) be and the same is hereby **GRANTED**. The defendants be and hereby are properly identified as John Doruff, Mark Stutleen, Andrew Van Gheem, and William Pollard.

**IT IS FURTHER ORDERED** that the Clerk shall note the corrected names of the defendants.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #19) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED** on its merits.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge